397 So.2d 90 (1981)
Charles Dean THOMAS, a minor who sues by his mother and next friend, Mrs. Charles R. Thomas
v.
Dr. Kurt M. NIEMANN.
79-619.
Supreme Court of Alabama.
February 6, 1981.
Rehearing Denied April 10, 1981.
*91 William J. Baxley and Charles A. Dauphin of Baxley, Stuart, Ward & Dillard, Birmingham, for appellant.
Marshall H. Fitzpatrick of Norman, Fitzpatrick & Wood, Birmingham, for appellee.
PER CURIAM.
Plaintiff, Charles Thomas, a minor fourteen years of age, brought this action by his mother as next friend against Dr. Kurt Niemann for the alleged negligence of Dr. Niemann in treating Thomas surgically on or about January 25, 1973, by negligently leaving sutures in plaintiff's leg. The leg became infected beginning July, 1979, and sutures from the 1973 surgery were discovered when the leg was operated on in January, 1980. The suit was filed February 12, 1980. Act No. 513, Acts 1975, contains a medical liability statute of limitations, Code 1975, § 6-5-482, that was pleaded by motion to dismiss. The motion was granted and judgment entered dismissing the action and taxing costs. Plaintiff appeals from that judgment.
The single issue raised by this appeal is whether Act No. 513, Acts 1975, is unconstitutional under Article IV, § 45, of the Alabama Constitution of 1901 because: (1) the subject of the Act is not clearly expressed in its title; and (2) the Act contains more than one subject.
The Alabama Constitution of 1901 provides in Article IV at § 45: "Each law shall contain but one subject, which shall be clearly expressed in its title, except general appropriation bills, general revenue bills, and bills adopting a code, digest, or revision of statutes...."
In our recent case of Street v. City of Anniston, 381 So.2d 26 (Ala.1980), we held that § 4 of Act No. 513, Acts 1975 (codified at Code 1975, § 6-5-482(a)), is a traditional statute of limitations and, therefore, is not subject to constitutional infirmity under § 45, saying:
Code 1975, 6-5-482(a), is similarly titled "a statute of limitations," and commences the running of the statute from the time of the act or omission giving rise to the cause of action. It does not, however, act as a grant of immunity; our case law has established that, in malpractice actions, legal injury occurs at the time of the negligent act or omission, whether or not the injury is or could be discovered within the statutory period. Garrett v. Raytheon, supra [368 So.2d 516], Hudson v. Moore, 239 Ala. 130, 194 So. 147 (1940), Sellers v. Edwards, 289 Ala. 2, 265 So.2d 438 (1972). Thus, the *92 Medical Liability Act contains a traditional statute of limitations, one which commences the running of the statute from the accrual of the cause of action, and is not subject to constitutional infirmity under § 45.
Plaintiffs attempt to distinguish their case from those cited by pointing out that Raytheon, Hudson and Sellers all involved the introduction of a foreign agent into the body of the plaintiff, while the instant case merely involved an omission on defendant's part. In Sellers, a bulldog clamp was left in the plaintiff's body after an operation; in Hudson, a gauze sponge was not removed during an operation; in Raytheon, the plaintiff's injuries resulted from exposure to radiation. This distinction is unpersuasive, however. Raytheon, Hudson and similar cases were not premised on any physical trespass to the plaintiffs' bodies, but on the occurrence of a legally cognizable injury, no matter how slight, which resulted immediately upon the taking place of the negligent act or omission. In these cases, the Court held that, although the actual injury initially incurred was so slight that it was not discovered until years later, the cause of action accrued, nevertheless, at the time of the act or omission complained of.
381 So.2d 26, at p. 31.
Street did not consider whether the Act was unconstitutional on the basis that it addressed more than one subject, the second and only remaining contention made here.
We hold that Act No. 513 does not contain more than one subject in contravention of the provisions of § 45 of the Constitution of Alabama of 1901. It is evident from the title as well as the provisions of the Act that the Act is a comprehensive statute dealing with medical liability in this state.
The title and Section 1 of Act No. 513 are as follows:
AN ACT
To provide a definite statute of limitations in liability actions; to eliminate the ad damnum clause in complaints alleging liability; to define the duty of care; to require warranties of cure to be in writing; to prevent advance payments from being considered admissions of liability. In lieu of the scintilla rule, to require evidence of substantial weight and provative [sic] effect in medical liability actions; to provide for periodic payments of awards in medical liability actions; to authorize the Insurance Commissioner to establish a joint underwriting association and to provide rules for such joint underwriting association; to provide for voluntary arbitration of disputes; and to require insurance carriers to report claims and costs incurred to the Insurance Commissioners.

Be It Enacted by the Legislature of Alabama:
Section 1. This act may be cited and known as the "Alabama Medical Liability Act."
Every provision of the Act is referred to seriatim in the title. Although better draftsmanship might have dictated a general statement of the scope or purpose of the Act before delineating each provision, nevertheless, the purpose of § 45 was served. As the Court said many years ago in Lindsay v. United States Savings & Loan Association, 120 Ala. 156, 24 So. 171 (1898):
The Constitution does not contemplate a multiplicity of titles; it contemplates but one title, and leaves the form which may be given it to legislative discretion. It may be expressed in general words, or it may be a brief statement of the subject, or it may be an index to, or an abstract of, the contents of the Act.
120 Ala. at 172, 24 So. 171. The subject of the Act is sufficiently expressed in the title, and the Act contains no more than one subject.
As we have so often said, § 45 should not be construed so as to handicap the legislative process. The constitutional purpose in requiring single subject legislation is laudatory but has been met when the separate provisions of a bill are germane to *93 the bill's general purpose. In Opinion of the Justices, 294 Ala. 555, 319 So.2d 682 (1975), the purpose of § 45 is addressed as follows:
The purposes of the "single subject" requirement Const. of Ala., 1901, § 45, are generally stated as: (a) notification to the public of the nature of the pending legislation; (b) avoidance of fraud on the legislature by inadvertent passage of provisions not related to the title; and (c) prevention of logrolling legislation. Boswell v. State, 290 Ala. 349, 276 So.2d 592, appeal dismissed 414 U.S. 1118, 94 S.Ct. 855, 38 L.Ed.2d 747 (1973). The title of a bill need not specify every provision contained. The "one subject" test of § 45 is satisfied when the bill's provisions are all referable to and cognate of the subject of the bill. Boswell, supra; Opinion of the Justices, 275 Ala. 254, 154 So.2d 12 (1963).
Because we hold that Act No. 513 meets the requirements of § 45 of the Constitution, we need not address the argument advanced that constitutionality is dependent upon Act No. 20, Acts of Alabama, Regular Session 1977, by which Act the 1975 Code was adopted.
We have stated that a statute of limitations is generally viewed as a remedial statute so that the statute in effect at the time suit is filed rather than the one in effect at the time of the accrual of the cause of action applies unless the later statute clearly states to the contrary. Street v. City of Anniston, supra. Furthermore, the legislature may create or shorten periods of limitation provided a reasonable time is allowed for existing causes of action to be brought. Street, supra; Coleman v. Holmes, 44 Ala. 124 (1870). This enactment does provide such a reasonable time for existing causes of action to be brought.
Under the provisions of Act No. 513, the plaintiff in this case had four years from January, 1973, until January, 1977, to bring his action. The Act also provides for one year after its effective date to bring an action if more than four years have theretofore expired. Thus, it provided a reasonable time for bringing the action. This action was not brought within that time and was, therefore, properly dismissed.
The judgment appealed from is affirmed.
AFFIRMED.
TORBERT, C. J., and MADDOX, ALMON, SHORES and ADAMS, JJ., concur.
JONES, J., concurs specially.
FAULKNER, EMBRY and BEATTY, JJ., dissent.
JONES, Justice (concurring specially):
I concur specially in order to emphasize the limited effect of the instant opinion and to analyze its holding in relationship to our recent cases of Street v. City of Anniston, 381 So.2d 26 (Ala. 1980), and Ramey v. Guyton [1980] 394 So.2d 2 (Ala. 1980).
It can hardly be overly emphasized that the only constitutional challenge made in the instant case is that the Medical Malpractice Statute (Act 513) violates the multiple subject prohibition of § 45. I acknowledge that the inartful draftsmanship of this Act's title provides a highly persuasive argument in support of Appellant's claim of constitutional invalidity. Nonetheless, I agree with the majority that, despite the title's technical deficiencies, the summation of all of its parts meets the single subject requirement of § 45.
The single subject test is not violated merely because the Act deals with multiple aspects of the same subject matter. Clearly, § 4 (creating a new statute of limitations), § 5 (prohibiting ad damnum clauses), § 6 (establishing the duty of care), § 8 (allowing arbitration), § 10 (providing defendants an optional mode for payment of certain judgments), and § 11 (defining the effect of advance payments) all relate to medical liability actions. Admittedly, more difficult of resolution is whether §§ 7, 9, and 11 (relating to medical malpractice insurance) deal with a separate subject and thus run afoul of § 45. Had these provisions of the Act not been "clearly expressed in its title," unquestionably, the second of the dual requirements of § 45 would have *94 been violated. But I agree with the majority that the inclusion of the insurance provisions does not render the Act a two-subject bill. I am persuaded that all the provisions of this Act are referable to and cognate of the broad general subject of the bill, which is reasonably and fairly discernible from its title.
This case represents the fourth constitutional challenge of § 4 of the Medical Malpractice Act (statute of limitations) to reach this Court within a one-year period.[1] At the risk of oversimplification, a brief summary of these holdings may be helpful to Bench and Bar in analyzing and applying the Act within varying statute of limitations contexts.
Perhaps our beginning point must predate these most recent medical malpractice cases and start with certain dicta in Plant v. R. L. Reid, Inc., 365 So.2d 305 (Ala.1978), which dealt with a statute of repose in the Architects and Builders Act (T. 7, § 23(1), Code 1940). The appellee in Plant, contending for validity of this statute of repose, sought to analogize its provisions with those of an earlier version of the Medical Malpractice Act which had been held constitutionally valid. The proposed analogy was rejected because, unlike the statute in Plant, the Medical Malpractice Statute was a traditional statute of limitations, commencing to run with the accrual of the cause of action, i. e., with the injury.
As the majority opinion in the instant case reflects, the dicta in Plant became the express rationale for the holding in Street (and were followed in McCauley v. Cunningham, 381 So.2d 31 (Ala.1980)), rejecting a § 45 attack on § 4 of the Act. The Street Court held that the defendant doctor's alleged misdiagnosis was the injury-causing act (or omission) giving rise to (i. e., accruing) the cause of action. Because the claims in Street were brought neither within the two-year period following such act or omission nor within the one-year period following the effective date of the Medical Malpractice Statute, the Court held the claims were barred.
Ramey, while also upholding the Statute, held that the claim was timely filed because the period of limitations did not commence to run with the initial act of the defendant doctor in prescribing the plaintiff's medication; rather, it began to run with the act causing injury, i. e., with the plaintiff's alleged resultant stroke. As the concurring opinion aptly points out, the act of the defendant doctor in prescribing the birth control pills was a continuing act not consummated until the taking of the medication by the plaintiff. The accrual of the cause of action did not occur in the detached, unilateral act of the doctor in writing the prescription, but in the plaintiff's acting upon the doctor's advice, so that there was an implied act on the part of the doctor with each taking of the pills by the plaintiff as prescribed.
Thus, the act causing injury, thereby accruing the cause of action and commencing the running of the statute of limitations, occurred on the last date on which the plaintiff took the prescribed medication. To hold otherwise necessarily would render § 4 a statute of repose rather than a traditional statute of limitations, and would subject the Act to the constitutional attack under § 45 that prevailed in Bagby Elevator and Electric Co., Inc. v. McBride, 292 Ala. 191, 291 So.2d 306 (1974).
In summary, then, our case law stands solidly for the proposition that § 4 of the Medical Malpractice Act is not violative of either aspect of § 45 of the State Constitution (one subject clearly expressed in the title); and this for the reason that, unlike the statute of repose challenged in Bagby Elevator, § 4 of the Medical Malpractice Act, as judicially interpreted, is a traditional statute of limitations. It is equally clear from the cases that § 4 will be applied consistently with traditional notions of statutes of limitations and not in accord with principles governing statutes of repose; i. *95 e., actions filed under the Medical Malpractice Act will be tested for limitation of actions purposes by measuring the allowable time for filing of the claim from the date of accrual of the cause of action.
In conclusion, one further observation: This Court's interpretation of § 4 (§ 6-5-482) is predicated, at least in part, on earlier holdings which rejected the discovery rule in medical malpractice cases. Hudson v. Moore, 239 Ala. 130, 194 So. 147 (1940); Sellers v. Edwards, 289 Ala. 2, 265 So.2d 438 (1972); see, also, Garrett v. Raytheon Co., Inc., 368 So.2d 516 (Ala.1979), reaffirming rejection of the discovery rule in a nonmalpractice context. In other words, the leaving of the sponge in plaintiff's operative incision in Hudson; the clamp in Sellers; and the exposure to radiation in Raytheon constitute the act causing injury (thus accruing the cause of action), and not the date of discovery of the injury.
Although, personally, I have cast my vote in favor of the discovery rule (see my dissenting opinion in Raytheon), I readily acknowledge the majority's rationale to the effect that the injury (whether known or unknown) accrued simultaneously with the act or omission of the alleged tortfeasor. I also accede to the desirability for consistency and uniformity in our holdings.
Therefore, the legislature's denomination of § 4 in the Act's title as a statute of limitations should be taken at face value and § 4 should be upheld as against a § 45 attack. Once the statute of limitations section is validated, however, it should be interpreted according to the traditional test, which commences its running with the accrual of the cause of action, that is, with the injury. While this interpretation may pose serious problems in other than medical malpractice statutes, it seems to me to have absolved, at least, the statute of repose problem. That is to say, including the medication prescription situation posed in Ramey, as there interpreted, I am unable to hypothesize any fact situation involving a health care provider where the alleged wrongful act or omission does not, at the same time, constitute the alleged resultant injury. (I realize the risk of making this statement, for, as surely as I expose the limitations of my imagination, such a case will cross my desk.)
At any rate, I believe for all practical purposes, this Court's interpretation of § 6-5-482 effectively subsumes any potential statute of repose problem. If I am correct in this, the medical malpractice statute of limitations, as now interpreted, aborts any dichotomy with § 13 of our State Constitution. Stated otherwise, if the limitation of "two years next after the act or omission or failure giving rise to the claim" is interpreted as a traditional statute of limitations (thus saving its constitutionality under § 45) which cannot commence until the accrual of the cause of action, and if the only facts presented reveal an act or omission or failure simultaneously with the alleged injury, then all issues involving a § 13 attack based on a statute of repose premise have been mooted. Consequently, even the prescribed outer limits (four years or until the eighth birthday of a minor under four) will be tested according to statute of limitations and not statute of repose standards.
EMBRY, Justice (dissenting):
As noted by the majority, the Alabama Constitution of 1901 provides in Article IV at § 45: "... Each law shall contain but one subject which shall be clearly expressed in its title, except general appropriation bills, general revenue bills and bills adopting a code, digest, or revision of statutes...."
Act No. 513, Acts 1975, contains sixteen sections. Of those, § 4 creates a new statute of limitations for medical liability actions; § 5 prohibits ad damnum clauses in medical liability complaints; § 6 establishes the duty of care owed to a patient by a physician, surgeon, dentist and hospital; § 8 allows parties to a medical liability claim to settle the claim by arbitration; § 10 allows defendants in medical liability actions an optional method for payment of judgments in excess of $100,000; and § 11 provides that advance payments in medical liability actions by the defendant or his insurer are *96 not admissible until there is a final judgment in favor of the plaintiff. These sections relate to medical liability actions and are codified at Code 1975, §§ 6-5-482 through 6-5-487.
Again, as noted by the majority, Street is addressed to the issue of whether § 4 of Act No. 513, Acts 1975 (codified at Code 1975, § 6-5-482(a)), is a traditional statute of limitations or whether it is a grant of immunity for which a notation thereof must be included in the title of the act as required by Article IV, § 45 of the Constitution of Alabama of 1901. We held that section of the act is a traditional statute of limitations; therefore not subject to constitutional infirmity because its title failed to note that it barred a cause of action. In Street, we did not consider whether the act was unconstitutional on the basis that it addressed more than one subject.
I am of the opinion that Act No. 513 is unconstitutional because it contains more than one subject in contravention of the provisions of § 45 of the Constitution of Alabama of 1901. It is evident from the title as well as the provisions of the act that the act deals with both medical liability actions and medical liability insurance. Thus, it is apparent the act deals with, at the very least, two separate subjects. As will be seen, it is my opinion that it deals with even more and runs afoul of § 45:
The purposes of the "single subject" requirement Const. of Ala., 1901, § 45, are generally stated as: (a) notification to the public of the nature of the pending legislation; (b) avoidance of fraud on the legislature by inadvertent passage of provisions not related to the title, and; (c) prevention of logrolling legislation. [Citations omitted.] The title of a bill need not specify every provision contained. The "one subject" test of § 45 is satisfied when the bill's provisions are all referable to and cognate of the subject of the bill.
. . . . .
Opinion of the Justices, 294 Ala. 555, 564, 319 So.2d 682, 691 (1975).
I am not able to conclude that the provisions of Act No. 513 satisfy the "one subject" test. Although there may be some relationship between medical liability and insurance covering such liability, it is clear that this act is susceptible to the very danger sought to be avoided by the constitutional prohibition against an act containing more than one subject. Provisions of this act cover a wide diversity of topics ranging from the statute of limitations, the amendment of the suspension of limitations as to minors, the form of a complaint and the duty of care applicable in medical liability actions, to the organization, regulation, and reporting requirements of medical liability insurance carriers. Therefore, Act No. 513, Acts 1975, with its § 4 relating to the statute of limitations, and special suspension of limitations as to minors is unconstitutional as originally enacted, in my judgment.
Section 4 was codified as Code 1975, § 6-5-482, when Act No. 20, Acts 1977, adopted the 1975 Code. I would therefore consider whether Act No. 20, adopting the 1975 Code effective 31 October 1977, made § 6-5-482, Code 1975, constitutionally valid. An act adopting a code of laws is not constitutionally required to contain only one subject, Gibson v. State, 214 Ala. 38, 106 So. 231 (1925); Bluthenthal v. Trager & Co., 131 Ala. 639, 31 So. 622 (1901); therefore, as of 31 October 1977, Code 1975, § 6-5-482, was constitutionally enacted.
Section 6-5-482 provides:
(a) All actions against physicians, surgeons, dentists, medical institutions or other health care providers for liability, error, mistake or failure to cure, whether based on contract or tort, must be commenced within two years next after the act or omission or failure giving rise to the claim, and not afterwards; provided, that if the cause of action is not discovered and could not reasonably have been discovered within such period, then the action may be commenced within six months from the date of such discovery or the date of discovery of facts which would reasonably lead to such discovery, whichever is earlier; provided further, that in no event may the action be commenced *97 more than four years after such act; except, that an error, mistake, act, omission or failure to cure giving rise to a claim which occurred before September 23, 1975, shall not in any event be barred until the expiration of one year from such date.
(b) Subsection (a) of this section shall be subject to all existing provisions of law relating to the computation of statutory periods of limitation for the commencement of actions, namely, sections 6-2-1, 6-2-2, 6-2-3, 6-2-5, 6-2-6, 6-2-8, 6-2-9, 6-2-10, 6-2-13, 6-2-15, 6-2-16, 6-2-17, 6-2-30 and 6-2-39; provided, that notwithstanding any provisions of such sections, no action shall be commenced more than four years after the act, omission or failure complained of; except, that in the case of a minor under four years of age, such minor shall have until his eighth birthday to commence such action. (Acts 1975, No. 513, § 4.)
A statute of limitations is generally viewed as a remedial statute so that the statute in effect at the time suit is filed rather than the one in effect at the time of the accrual of the cause of action applies unless the later statute clearly states to the contrary. Street v. City of Anniston, 381 So.2d 26 (Ala.1980). Furthermore, the legislature may create or shorten periods of limitation provided a reasonable time is allowed for existing causes of action to be brought. Street, supra; Coleman v. Holmes, 44 Ala. 124 (1870). This enactment does not, however, provide such a reasonable time for existing causes of action to be brought. At the time Code 1975, § 6-5-482, became effective by virtue of Act No. 20, Acts 1977, on 31 October of that year, it provided only that actions might be commenced on claims accruing before 23 September 1975 within a year after 23 September 1975. Therefore, at the time it became a part of the Code, it was ineffective to provide a year from 23 September 1975 within which to file claims accruing before 23 September 1975. Prior to 31 October 1977, since Act No. 513 was constitutionally infirm, a plaintiff was allowed two years from the act or omission giving rise to a cause of action for medical malpractice in which to commence an action. If the cause of action were not discovered, or could not reasonably have been discovered by the plaintiff within two years, then the plaintiff was allowed an additional six months from the time of discovery to commence an action, provided the action was commenced within six years after the act giving rise to the cause of action. Tit. 7, § 25(1), Code 1940 as amended (Recompiled 1958).
Additionally, because Charles Thomas was a minor at the time of the act complained of, Tit. 7, § 36, Code 1940 as amended (Recompiled 1958) (presently Code 1975, § 6-2-8), suspended the running of the limitations period as to him until he attained majority. When this cause of action was commenced on 7 February 1980, Charles Thomas was allegedly 14 years old and therefore under provisions of law prior to the effective date of § 6-5-482 his action was timely commenced. Because no provision was made for a reasonable time in which to commence an action on a claim in existence prior to 31 October 1977, and which was not barred prior to 31 October 1977, Code 1975, § 6-5-482, is ineffective as against those claims. The statute of limitations applicable to such claims was the statute in effect prior to the effective date of Code 1975, § 6-5-482: 31 October 1977.
For the reasons I have stated, I would reverse the judgment below and remand the case for trial on its merits.
FAULKNER and BEATTY, JJ., concur.
NOTES
[1] A fifth case is currently pending under submission: 79-129, Reese v. Rankin Fite Memorial Hospital.